**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| RANDY BROWN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 23-0730 (ABJ) |
| CITIBANK, N.A., | ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION and ORDER**

Plaintiff brings this action under the Americans with Disabilities Act ("ADA"), *see* 42 U.S.C. § 12101 *et seq*., against Citibank, N.A. ("Citibank"), in its capacity as Trustee for Chase Funding Mortgage Loan Asset-Backed Certificates, Series 2003-2.  This matter is before the Court on the Motion of Defendant to Dismiss Plaintiff's Complaint With Prejudice and Without Leave to Amend Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (ECF No. 5), Plaintiff's Motion to Amend (ECF No. 15), a motion for "Effective Communication Accommodation" (ECF No. 25) and Motion Requesting an Opportunity to Provide the Medical Report of Dr. Bernard (ECF No. 26). For the reasons discussed below, the Court GRANTS defendant's motion to dismiss and DENIES plaintiff leave to amend the complaint.  In light of the resolution of Citibank's motion and the Court's Order (ECF No. 24) resolving plaintiff's past requests for accommodation (ECF Nos. 12, 21 and 23), the Court DENIES AS MOOT plaintiff's motions for accommodation.

1

## I. BACKGROUND

To provide context for plaintiff's current claims, it is helpful to review allegations regarding plaintiff's disability, his mortgage loan, and ongoing foreclosure proceedings in the Superior Court of the District of Columbia.

### A. Plaintiff's Disability

"In 2009 [plaintiff] suffered a 'diffuse complex concussion' that caused widespread disruption of the neuronal circuitry ('diffuse axonal injury' or 'DAI')," Compl. (ECF No. 1) ¶ 27, resulting in a cognitive disability, *see id*. ¶ 2.  According to plaintiff, the disability "causes slower brain processing hence slower thinking or difficulty accomplishing tasks or a reduction in the number of tasks [he] can . . . perform[] at a given time."  *Id*. ¶ 27.  In addition, plaintiff explains, the condition "adversely affects vision and reading," *id*. ¶ 28, and his ability to communicate effectively, *see id*. ¶ 2.  For example, plaintiff states that reading calls for "such a high level of brain activity that [his] brain stops processing, sometimes causing an inability to comprehend the meaning of words or the ability to see what is on the page.  Sections of the page disappear, blur, or becom[e] incomprehensible."  *Id*. ¶ 28.  Further, he explains, from 2009 through 2014, the condition "affected vision and auditory functioning resulting in perceptual disturbances, intermittent blindness, auditory dysfunction, nausea, mobility problems, disorientation, concentration and memory problems, and seizures, undermining rational thought processes, breathing and sleep[.]"  *Id*. ¶ 35; *see id*. ¶ 42.  Although plaintiff's condition was thought to be permanent, *see id*. ¶ 42, he had improved by late 2013, *see id*. ¶ 52.

### B. Allegations Regarding Mortgage Loan and Oral Modification of its Terms

Plaintiff and Samuel Taylor purchased real property in the District of Columbia at 1417 Ames Place, N.E.  *See* Mem. in Support of Def.'s Mot. to Dismiss Pl.'s Compl. With Prejudice

and Without Leave to Am. Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (ECF No. 6, "Def.'s

Mem."), Ex. B1 (ECF No. 6-3, "Foreclosure Complaint") ¶¶ 1-2.  Plaintiff and Taylor obtained a

residential mortgage loan in the principal amount of $200,000 from Chase Manhattan Mortgage

Corporation ("Chase"), and on June 6, 2003, executed a promissory Note and secured the loan

with a Deed of Trust.  *See* Foreclosure Complaint ¶¶ 6-7; Def.'s Mem., Exhs. A-B (ECF Nos. 6-1

and 6-2, respectively, Adjustable Rate Note and Deed of Trust).  Citibank, N.A. since has become

"Trustee for Chase Funding Mortgage Loan Asset-Backed Certificates, Series 2003-2 (the

'Trust')," Def.'s LCvR 26.1 Disclosure (ECF No. 7) at 1, and the Trust owns the Note, *see*

Foreclosure Complaint ¶¶ 9-10; Def.'s Mem., Ex. C (ECF No. 6-4, Corporate Assignment of Deed

of Trust).

In 2009, Compl. ¶ 42, when defendant learned of and "understood the nature of [plaintiff's]

disability, [it] offered [plaintiff] a 'special accommodation' reserved for persons with mental

disabilities who cannot locate the documents necessary for a written loan modification," *id*. ¶ 43.[1]

The accommodation took the form of an oral modification of the mortgage loan agreement, *see id*.

¶¶ 44, 54, pursuant to which plaintiff's mother made mortgage payments on plaintiff's behalf, *see*

*id*. ¶¶ 44, 47-48.  If payments were not received within 24 hours of defendant's demand, plaintiff

would "lose the benefits" of the oral contract.  *Id*. ¶ 56.  Defendant allegedly represented to plaintiff

that the oral loan modification was a binding contract which complied with the ADA.  *See id*. ¶¶

48, 54.

---

[1]  It appears that Chase serviced the loan in 2009 and continued to do so until transfer of the
account in September 2013 to Ocwen Loan Servicing, LLC.  *See* Compl. ¶ 51.  The "defendant"
to which plaintiff refers at the time of the oral modification, *see, e.g., id*. ¶ 43, and collection of
payments between 2009 and 2013, *see, e.g., id*. ¶¶ 50-51, presumably was a Chase representative.

According to plaintiff, "[d]efendant devised the oral contract as an affirmative act of concealing fraudulent activity." *Id.* ¶ 53. Defendant not only collected regular payments but also "compelled overpayments," *id.* ¶ 49, such that, between 2009 and 2013, defendant collected more than $60,000, *see id.* ¶¶ 50, 61. Plaintiff alleged that defendant "looted the account by misapplying, reversing payments, then fraudulently transferring the payments," *id.* ¶ 58, and otherwise failing to credit amounts paid on the mortgage loan, *see id.* ¶ 57, while it "affirmatively" and "fraudulently concealed [its] failure to apply payments under the terms of the mortgage contract," *id.* ¶ 55; *see id.* ¶¶ 73, 83. These acts occurred prior to and in anticipation of the transfer of the account to Ocwen Loan Servicing, LLC ("Ocwen") in September 2013. *See id.* ¶¶ 51, 59, 68.

Plaintiff alleged that defendant's "deceptive accounting procedures . . . targeted [plaintiff's] disability . . . by applying payments, reversing payments, and ultimately transferring payments, without having any noticeable effect upon the account that would provide *inquiry notice.*" *Id.* ¶ 72 (emphasis in original). Only after having retained the services of a bookkeeper who "observed a pattern of esoteric notations related to funds being applied, reversed, the transferred from the account," *id.* ¶ 69, did plaintiff "discover[] that prior to the transfer of the account to Ocwen more than $60,000 of payments were misapplied then transferred," *id.* ¶ 68. Plaintiff has submitted an excerpt of mortgage transaction history, *see id.* ¶ 63, which allegedly illustrates defendant's "accounting malfeasance," *id.* ¶ 64, in 2011 and 2012.

### C.  *Citibank, N.A. v. Brown*, No. 2019-CA-003717-R(RP) ("Foreclosure Action")

Citibank initiated a foreclosure action in the Superior Court of the District of Columbia on June 8, 2019, against plaintiff and Taylor. *See* Def.'s Mem. at 5; *see generally id.*, Ex. D (ECF No. 6-8, "Docket Sheet"). It alleged that the monthly mortgage loan payment due on September

1, 2013, and all subsequent payments due, had not been paid; that plaintiff failed to respond to a

demand notice by curing the default; and that, as of April 1, 2019, Citibank was owed $237,059.64.

*See* Foreclosure Complaint ¶¶ 11-14.

In the course of foreclosure proceedings, plaintiff retained counsel who, on August 2, 2021,

filed an amended answer to Citibank's complaint and an amended counterclaim, *see* Def.'s Mem.,

Ex. E (ECF No. 6-9, "Am. Ans. & Am. Counterclaim"), generally denying Citibank's allegations

of default and asserting:

> Upon information and belief, . . . between 2009 and 2013, on
> numerous occasions mortgage payments, which were actually made
> by or on behalf of Counter-Plaintiff, were applied towards and
> against the principal, interest and escrow of the Loan and . . .
> subsequently and inexplicably reversed or deducted therefrom
> causing Counter-Plaintiff not to receive any or all of the credit
> properly due for such payments.

Am. Ans. & Am. Counterclaim at 7 ¶ 6.  Plaintiff alleged that payments made by him or on his

behalf "were more than sufficient to and, therefore, would have prevented the alleged default[.]"

*Id*. at 7 ¶ 7.  The counts of the counter-complaint were: Breach of Contract, Breach of Implied

Contractual Duty of Good Faith and Fair Dealing, Unfair and Deceptive Trade Practices, Fraud,

Fraud-Concealment or Non-Disclosure, and Negligent Misrepresentation.  *See generally id*. at 10-

19 ¶¶ 16-56.

On September 20, 2021, Citibank filed a motion to dismiss arguing, among other things,

that plaintiff's counter-claims were barred by the District of Columbia's three-year statute of

limitations.  *See generally* Def.'s Mem., Ex. F (ECF No. 6-10, Mot. of Counter-Def., Citibank,

N.A., as Trustee for Chase Funding Mortgage Loan Asset-Backed Certificates, Series 2003-2, to

Dismiss Counter-Pl.'s Counter-Compl. Pursuant to D.C. Super. Ct. R. Civ. P. 12(b)(6)) at 10-21

(page numbers designated by CM/ECF).  The Hon. Donald Tunnage held a virtual hearing on the

motion on June 9, 2022, at which Citibank's counsel, plaintiff and plaintiff's retained counsel appeared.  *See id*. at 6; *see also* Docket Sheet at 24-25 (page numbers designated by CM/ECF).

The Superior Court docket reflected that "[t]he Court heard Oral Arguments . . . and the procedural history of the case" on June 9, 2022, and advised it would "rule on the pending motion[] from Chambers."  Docket Sheet at 25.  Judge Tunnage issued an Order on July 13, 2022, granting Citibank's motion and dismissing plaintiff's counter-claims with prejudice as time-barred.  *See* Def.'s Mem., Ex. H (ECF No. 6-12, Order, *Citibank, N.A. v. Brown*, No. 2019 CA 003717 R(RP) (D.C. Super. Ct. July 13, 2022)).  After Judge Tunnage granted counsel's motion to withdraw on September 15, 2022, *see* Docket Sheet at 27, plaintiff filed a *pro se* motion for reconsideration on September 30, 2022, *see id*. at 28, which Judge Tunnage denied on November 10, 2022, *see id*. at 30.

### D. Factual Allegations of Plaintiff's Complaint[2]

In preparation for the June 9, 2022, Superior Court hearing, plaintiff "paid an attorney to develop a strategy to discuss the question of the *statute of limitations* in the context of the *fraudulent concealment* of accounting malfeasance discovered in the mortgage receipts issued by the loan servicer."  Compl. ¶ 4 (emphasis in original).  That strategy included "an auxiliary aid,

_____

[2]   The complaint refers to the Fair Housing Act ("FHA"), *see* Compl. ¶¶ 1, 12, 14-15, specifically the following provision:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C § 3617.  Plaintiff does not identify the right he sought to exercise or enjoy under the FHA, and the Court addresses plaintiff's ADA claims only.

utilizing charges of misapplied payments," prepared with the assistance of "a bookkeeper, an accountant, and a graphic designer[.]" *Id.* ¶ 5. According to plaintiff, use of the auxiliary aid would "depict how the loan servicer . . . misappl[ied] payments," *id.* ¶ 6, and "challeng[e] inaccurate or misleading letters of default," *id.* ¶ 5. The auxiliary aid allegedly would "ensure Plaintiff an equal opportunity to be heard" at the June 9, 2022, hearing, *id.* ¶ 3; *see id.* ¶¶ 8, 11, 32-34, because "[a] coherent discussion of the conduct in question would be impossible without the organizing effect . . . that enabled Plaintiff to . . . identify with specificity, the amounts and dates of misapplied and transferred payments," which, in turn, support his contention that "fraudulent concealment of accounting malfeasance tolled the statute of limitations until the discovery of the fraud." *Id.* ¶ 8.

Citibank allegedly nixed plaintiff's plan to use the auxiliary aid when counsel "moved the Superior Court to dispense with the oral hearing." *Id.* ¶ 9; *see id.* ¶¶ 17, 94.[3] Notwithstanding the allegation that the Superior "cancelled the oral hearing," *id.* ¶ 10, plaintiff complained that Judge Tunnage restricted plaintiff's counsel's participation at the hearing "to answering random questions posed by the court [thus] avoiding the centrally important concerns outlined in the auxiliary aid," *id.* According to plaintiff, *see id.* ¶¶ 1, 15, Citibank thus violated the ADA. "Whether inadvertently or intentionally, opposing counsel interfered with the effort by Plaintiff to use an auxiliary aid during [the June 9, 2022,] hearing . . . , constituting a violation of 28 CFR 36.206." Compl. ¶ 18; *see id.* ¶ 11. Plaintiff devoted the bulk of the complaint to factual allegations and legal arguments regarding wrongdoing on the part of loan servicers, breach of

---

[3] Plaintiff attributes the motion to dispense with the oral hearing to counsel for Select Portfolio Servicing, Inc., another loan servicer. *See* Compl. ¶ 9. SPS was not a party to the Foreclosure Action, however, and no representative for SPS attended the June 9, 2022, hearing. *See* Docket Sheet at 25.

contract and fraudulent concealment claims, and equitable tolling of the statute of limitations. *See generally id*. ¶¶ 42-93.

Plaintiff asks that Citibank "be prevented from taking further adverse actions against the housing rights of Plaintiff, affording Plaintiff an equal opportunity to be heard," *id*. ¶ 95.a., and a new "oral hearing . . . with assistance from counsel, permitting testimony," *id*. ¶ 95.b., supporting "the application of tolling statutes related to *CounterClaims*," *id*. ¶ 96 (emphasis in original), raised in the foreclosure action.

## II. LEGAL STANDARDS

### A. Subject Matter Jurisdiction

Citibank moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) on the ground that the Court lacks subject matter jurisdiction and under Rule 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. *See generally* Def.'s Mem. at 10-28. Since this ruling will be predicated on jurisdiction alone, the Court will set out the standard applicable to motions filed under Rule 12(b)(1).

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court with limited jurisdiction, we begin, and end, with examination of our jurisdiction."). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, 13 (D.D.C. 2001). Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement [. . .] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v.*

8

*District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). A plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). While the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged,'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)), it need not limit itself to considering the allegations of a complaint, and instead "may consider such materials outside the pleadings as it deems appropriate to resolve the question of whether it has jurisdiction to hear the case." *Scolaro v. District of Columbia Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1993)); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). "If the [C]ourt determines at any time that it lacks subject-matter jurisdiction, the [C]ourt must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### 2. Amending the Complaint

Generally, leave to amend a complaint should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]he grant or denial of leave to amend is committed to a district court's discretion." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). In determining whether "justice so requires" amendment, the Court considers factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment[.]" *Atchinson v. District of Columbia*, 73 F.3d 418, 425-26 (D.C. Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Court "may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (citing *Foman*, 371 U.S. at 181–82). Consequently, "review for futility 'is, for practical purposes, identical to review of a Rule 12(b)(6)' motion to dismiss." *Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52, 57 (D.D.C. 2012) (quoting *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215-16 (D.C. Cir. 2010)); *see also DC2NY, Inc. v. Acad. Bus, LLC*, No. 18-cv-2127, 2020 WL 1536219, at *16 (D.D.C. Mar. 31, 2020) (noting that "defendant's opposition on grounds of futility of amendment functions as a motion to dismiss").

## III. DISCUSSION

### A. Citibank's Motion to Dismiss

The Court rules on Citibank's dispositive motion without the benefit of plaintiff's position. Although the Court issued an Order (ECF No. 8) setting June 8, 2023, as the deadline for plaintiff's opposition or other response to the motion, and advising plaintiff that the Court would treat the motion as conceded if he failed to file a timely response, plaintiff has not filed an opposition.

#### 1. Plaintiff Lacks Standing to Bring a Claim Under Title III of the ADA

Plaintiff expressly relies on an implementing regulation for Title III of the ADA, *see* Compl. ¶¶ 1, 11, 18, which in relevant part provides:

> No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

10

28 C.F.R. § 36.206(b).  Private suits are permitted, and if successful, only injunctive relief can be awarded.  *See* 28 C.F.R. § 36.501(a); *Jefferson v. Stinson Morrison Heckler LLP*, 249 F. Supp. 3d 76, 79 (D.D.C. 2017) (citing 42 U.S.C. § 12188 (incorporating § 2000a–3(a), which authorizes a "civil action for preventive relief")).

Citibank argues that plaintiff lacks standing to assert a Title III claim against it because the facts alleged "do[] not establish any injury in fact which was caused by any of [its] conduct, nor the potential of real future injury that can be properly enjoined."  Def.'s Mem. at 13.  Its point is well taken.

A plaintiff has standing to sue if he shows he "has suffered an injury in fact, defined as the invasion of a legally protected interest [that] is both (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical; (2) that a causal connection exists between the injury and the conduct complained of, such that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a decision in favor of the plaintiff."  *McKnight-Nero v. Walmart, Inc.*, No. 20-cv-1541 (APM), 2021 WL 663315, at *3 (D.D.C. Feb. 19, 2021) (quoting *Lujan*, 504 U.S. at 560-61) (internal quotation marks omitted).  The alleged injury must be a *future* injury because "harm in the past . . .  is not enough to establish a present controversy, or in terms of standing, an injury in fact."  *Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334, 336 (D.C. Cir. 2003).  "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to merely conjectural or hypothetical—threat of future injury."  *Nat. Res. Def. Council v. Peña*, 147 F.3d 1012, 1022 (D.C. Cir. 1998) (quoting *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994)).

Insofar as plaintiff's claim arises from the cancellation of the June 9, 2022, oral hearing, plaintiff fails to allege plausibly that the hearing actually was cancelled. The Court takes judicial notice of the Superior Court docket, which, contrary to plaintiff's assertions, *see* Compl. ¶¶ 10-11, indicates that the motion hearing did take place, *see* Docket Sheet at 25. Plaintiff is no more successful in alleging plausibly that he was denied a meaningful opportunity to participate in the hearing. Again referring to the Docket Sheet, it is apparent that plaintiff was represented by counsel who, as would be expected of an officer of the court, responded to the presiding judge's specific questions. Plaintiff's dissatisfaction with counsel's level of participation does not amount to deprivation of a right protected by the ADA. That counsel "was restricted to answering random questions posed by the court," Compl. ¶ 10, may not have been to plaintiff's liking, but nothing in the complaint – aside from plaintiff's conclusory assertions – supports plaintiff's position.

More importantly, plaintiff does not allege facts demonstrating that he is at risk of a future injury. The July 9, 2022, hearing already has taken place and plaintiff's counter-complaint already has been dismissed, so the harm is done. Absent allegations of the invasion of a legally protected interest that is concrete and particularized, and actual or imminent, plaintiff fails to show an injury in fact, without which he lacks standing.

### 2. This Court Lacks Jurisdiction to Review or Reverse Superior Court Rulings

Even if plaintiff had standing, the Court lacks jurisdiction to award the relief he demands. Plaintiff asks this Court to "prevent[ Citibank] from taking any further adverse actions against the housing rights of Plaintiff," Compl. ¶ 95.a., and to order a new "oral hearing . . . with assistance from counsel[] permitting testimony," *id.* ¶ 95.b., supporting "the application of tolling statutes related to *CounterClaims*," *id.* ¶ 96. Plaintiff cannot avoid or evade the consequences of unfavorable rulings in the Foreclosure Action by asking this federal district court to review, revise,

or reverse Superior Court rulings, all matters beyond this Court's jurisdiction.  *See Pearson v. United States*, 377 F. App'x 22, 22–23 (D.C. Cir. 2010) (per curiam) (affirming dismissal of complaint described as "an outgrowth of an ongoing matter in D.C. Superior Court" for lack of subject matter jurisdiction because "United States district courts do not have authority to review or otherwise interfere with ongoing D.C. Superior Court matters"); *Rowland v. Superior Court Building B*, No. 1:14-cv-0450, 2014 WL 1321106, at *1 (D.D.C. Mar. 20, 2014) ("This Court has no authority to review or reverse the decisions of a Superior Court judge, or to direct the activities of that court."); *see also District Properties Assoc. v. District of Columbia*, 743 F.2d 21, 27 (D.C. Cir. 1984) ("[B]ased on principals of equity, the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny restrains federal courts from interfering in ongoing state judicial proceedings.").

**B. Plaintiff's Motion to Amend the Complaint**

On July 3, 2023, plaintiff filed a motion to amend (ECF No. 15) and a proposed amended complaint (ECF No. 15-1, "Proposed Am. Compl."). Citibank has opposed the motion on the ground that amendment is futile. *See* Reply of Def. in Further Support of its Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (ECF No. 14) at 5.

On review of plaintiff's proposed amended complaint, the Court finds that its factual allegations do not differ substantially from those set forth in the original complaint. Instead, in light of defendant's alleged efforts "to prevent Plaintiff's testimony assisted by an auxiliary aid and counsel" at the June 9, 2022, hearing, plaintiff asks that "[a] Special Master review . . . the accounting irregularities that occurred from 2009 [through] 2013, when JP Morgan Chase serviced Plaintiff's" mortgage loan. Proposed Am. Compl. ¶ 30. Plaintiff, albeit in an indirect manner, is asking this Court to delve into the merits of the Foreclosure Action, and this the Court cannot do.

**IV. CONCLUSION**

Because plaintiff seeks the reversal of rulings issued by the Superior Court of the District of Columbia, as well as other relief involving further hearings in that court or review of the facts underlying those rulings, this Court lacks subject matter jurisdiction over his claims. Therefore, it is hereby

**ORDERED** that the Motion of Defendant to Dismiss Plaintiff's Complaint With Prejudice and Without Leave to Amend Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) [5] is **GRANTED**; it is

**FURTHER ORDERED** that Plaintiff's Motion to Amend [15], "Effective Communication Accommodation [25] and Motion Requesting an Opportunity to Provide the Medical Report of Dr. Bernard [26] are **DENIED**; and it is

**FURTHER ORDERED** that the complaint [1] and this civil action are **DISMISSED**.

This is a final appealable Order.

**SO ORDERED.**

DATE: November 13, 2023               /s/
                                      AMY BERMAN JACKSON
                                      United States District Judge